

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Fred Erisman
Criminal District Attorney
Longview, Texas

Dear Sir:

> Opinion No. O-1469
> Re:  Whether or not a purported
> contract to sell requires
> revenue stamps to be affixed
> thereupon and cancelled as
> is provided by Article 7047-E,
> Vernon's Annotated Civil Stat-
> utes, 1939.

We received your letter dated September 20, 1939, requesting our opinion of the following question:

"Does the enclosed instrument require reve-
nue stamps to be affixed thereupon and cancelled
under the provisions of Article 7047-E, Vernon's
Annotated Civil Statutes?"

The instrument, leaving out description of the property involved, reads as follows:

"STATE OF TEXAS
COUNTY OF DALLAS  :

This AGREEMENT made and entered into this
10th day of June, 1939, by and between GENERAL
AMERICAN OIL COMPANY OF TEXAS, acting herein by
and through its duly authorized officers, here-
inafter called 'SELLER', and GILCREASE OIL COM-
PANY, an Oklahoma Corporation, acting herein by
and through its duly authorized officers, herein-
after called 'BUYER',

## W I T N E S S E T H

For and in consideration of the sum of SIX
HUNDRED AND FIFTEEN THOUSAND ($615,000.00) DOL-
LARS to be paid as hereinafter provided, Seller
agrees to sell to Buyer, and Buyer agrees to

to certain oil and gas mining leasehold es-
tates (comprising what is commonly called
the Seventh-Eighths (7/8 Working interest),
together with like interests in the personal
property used and obtained in connection
therewith, all situated in Gregg County,
Texas, as follows:

* * *

Buyer has heretofore examined abstracts
of title and has approved the title to the
property hereinabove contracted for and this
contract is in no wise conditioned upon title.

This sale shall be consummated in the fol-
lowing manner and an assignment or assignments
are to be executed by Seller to Buyer as follows:

Buyer is this day executing and deliver-
ing to Seller, contemporaneously herewith, its
negotiable promissory note, payable to Seller's
order, in the principal sum of SIX HUNDRED AND
FIFTEEN THOUSAND ($615,000.00) DOLLARS, due on
or before December 31, 1940; provided that
Buyer may at any time prior to said date, pay
said note in whole or in part, provided that
no partial payment shall be for less than Twenty
(20%) Percent of the whole. Said note shall be
payable at Dallas, Texas, and shall bear inter-
est at the rate of Five (5%) Percent per annum
on all amounts from time to time remaining un-
paid until maturity; principal and interest
past due shall bear interest at the rate of
Ten (10%) Percent per annum, and said note
shall provide for the usual attorney's fees of
10% in principal and interest then due if col-
lected by suit or placed in the hands of an
attorney for collection. The delivery of said
note is unconditional.

As and when the principal of said note is
paid to Seller, Seller shall execute and de-
liver to Buyer an assignment or assignments in
due and customary form, with covenants of gen-
eral warranty, covering the interests herein

contracted to be conveyed, or such portion thereof as is represented by such payments on the principal; viz:

Should Buyer, prior to the due date of said note, pay Twenty (20%) Percent of the principal of said note, Seller shall thereupon execute and deliver to Buyer an assignment covering Twenty (20%) Percent of the interests in and to the oil and gas mining leasehold estates and personal property and equipment thereon or used in connection therewith herein contracted to be conveyed; and in like manner, upon other and further payments upon the principal of said note by Buyer, assignment shall be executed and delivered for corresponding portions of the interests herein contracted to be conveyed, and when the entire amount due on said note has been paid at or before maturity, Seller shall execute and deliver to Buyer an assignment covering all that portion of the interests herein contracted to be conveyed not heretofore conveyed.

Any and all such assignments shall describe the oil and gas leaseholds by metes and bounds.

As and when assignment or assignments are executed by Seller to Buyer hereunder, Buyer shall be entitled to receive thereafter from the Pipeline company taking the oil from said lease the interest in the oil runs corresponding to the interests conveyed in such assignment or assignments, and Seller will execute, in connection with such assignment, necessary transfer orders to effectuate that purpose.

Subject to the foregoing provisions, the oil runs from the interests herein contracted to be conveyed shall continue to be run to GENERAL AMERICAN OIL COMPANY OF TEXAS, and it shall at all times be entitled to receive proceeds of oil run from all of said

interests not actually assigned and conveyed by it to Buyer. Provided, however, that all net amounts so received by Seller from proceeds of oil run from the interests herein contracted to be conveyed, or any part thereof, up to the date of maturity of said note, shall be credited upon said note and the amount thereof shall be pro tanto reduced to the extent of such net proceeds received by Seller, from and after the date of this contract, the same being applied first to the payment of interest and then to the payment of principal.

Buyer has this day purchased from Seller certain interests in the above described oil and gas leasehold estates under the terms of that certain agreement between Seller and Buyer of May 15, 1939, which interests so purchased are not covered by this contract, and by virtue of such purchase, and under this contract, Buyer shall be entitled to assume forthwith the actual physical possession, management and operation of the entire oil and gas leasehold estates above described, under the terms and provisions of that certain operating agreement this day made and entered into by and between Buyer as "OPERATOR" and Seller as "NON-OPERATOR", and be entitled to retain and hold such possession, management and operation until default shall be made in payment of the note hereinabove provided for, but in event of any such default Seller shall be immediately entitled and without notice to retake the physical possession, management and operation of said property and shall thereafter have the right to manage and operate same without prejudice, of course, to the ownership by Buyer of the interests in said oil and gas leaseholds heretofore assigned and conveyed to Buyer.

It is expressly understood and agreed that all expenses of development and operation on said property and all taxes (other than income taxes) in connection therewith from and after the date of this contract, to be borne by Buyer and by Seller respectively, in pro-

portion to the respective interests of each
in said oil and gas mining leasehold estates
in accordance with said above mentioned oper-
ating agreement between Buyer and Seller of
this date.

In the event of default by Buyer in the
payment of any portion of the note hereinabove
provided for, at maturity, all interest and
right of Buyer in that portion of the inter-
ests herein contracted to be conveyed, which
have not theretofore been already paid for
and assigned and conveyed to Buyer, shall at
Seller's option forthwith and ipso facto
cease and terminate and the same shall remain
vested in Seller free and clear of all claim
of Buyer; and Buyer shall remain liable to
Seller upon said note to the extent of the un-
paid balance thereof as liquidated damages.
The option above given to Seller shall be cumu-
lative and not exclusive, and is intended to
provide a remedy in addition and without pre-
judice to all other remedies to which Seller
may be lawfully entitled.

This agreement is hereby made effective
as of 7:00 o'clock A.M. of the date first
hereinabove written.

This agreement shall be binding upon and
shall inure to the benefit of the respective
parties hereto, and their respective heirs
and assigns.

WITNESS OUR HANDS the day and year first
hereinabove written.

        *  *  *"

Article 7047-E, supra, reads, in part, as follows:

"(a) Except as herein otherwise provid-
ed there is hereby levied and assessed a tax
of Ten (10¢) Cents on each One Hundred ($100.00)
Dollars or fraction thereof, over the first Two
Hundred ($200.00) Dollars, on all notes and
obligations secured by chattel mortgages, deed

Honorable Fred Erisman, page 6

of trust, mechanic's lien contract, vendor's lien, conditional sales contract and all instruments of a similar nature which are filed or recorded in the office of the County Clerk under the Registration Laws of this State; provided that no tax shall be levied on instruments securing an amount of Two Hundred ($200.00) Dollars, or less. After the effective date of this Act, except as hereinafter provided, no such instrument shall be filed or recorded by any County Clerk in this State until there' has been affixed to such instrument stamps in accordance with the provisions of this section; * * *"

It appears from the instrument in question that the vendor has retained legal title until the note given for the purchase price has been paid. It also appears that the vendee has been given possession of all the property involved in the contract of sale. Since the note is fully negotiable and the delivery of same being absolutely unconditional, we conclude that the vendor reserved the legal title solely as security for the payment of the note.

In Judd v. Rieff (Ark.) 295 S. W. 370, it was held that the effect of a contract for the sale and purchase of real estate where vendee had been given possession, was to make the purchaser the equitable owner and the vendor mortgagee for the unpaid purchase money.

We quote from 66 Corpus Juris 708 as follows:

"It has been said that the relation of the vendor and purchaser under a contract for the sale of land is analogous to, or substantially that of mortgagor and mortgagee, and that the effect of a sales and purchase contract is to create a mortgage in favor of the vendor to secure payment of the purchase money."

Rogers v. Leon and H. Blum, 56 Texas 6, holds that a vendor, under a bond for title, has a vendor's lien for the unpaid purchase money. A bond for title is the same thing as an executory contract to sell. 43 Tex. Jur. 51.

Honorable Fred Erisman, page 7

In First National Bank of Falls City v. Edgar, 91 N.W. 404 (Supreme Court of Nebraska), the court cites with approval the following language found in Hendrix v. Barker, 49 Neb. 369, 68 N.W. 531:

"In an executory contract for the sale of real estate, equity treats the vendor as the trustee of the purchaser, and the purchaser as the trustee of the purchase money for the vendor." Again in the same case it is said: "In such a contract, the vendor, upon default made by the vendee, may treat the contract as an ordinary real estate mortgage, and foreclose it as such."

We are of the opinion that the instrument in question comes within the provisions of Article 7047E, supra. It necessarily follows that revenue stamps must be affixed to said instrument and cancelled in order for same to be filed in the office of the County Clerk under provisions of the registration laws.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     Glenn R. Lewis
          Assistant

By     Lee Shoptaw

LS:jm

APPROVED JAN 6, 1940

ATTORNEY GENERAL OF TEXAS

